**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Case No. 3:24cr41** |
| | ) | |
| **MUHAMMAD PAHLAWAN,** | ) | |
| **Defendant** | ) | |

**SUPPLEMENTAL MEMORANDUM IN RESPONSE TO THE COURT'S JULY 15, 2024, ORDER REGARDING POTENTIAL CONFLICT OF INTEREST**

Mr. Pahlawan hereby submits this supplemental memorandum in response to the Court's July 15, 2024, Order.

**Background**

On July 15, 2024, the Court conducted a hearing to address the government's Motion for Inquiry Into Possible Conflicts of Interest (ECF No. 62). The government's Motion noted that the Office of the Federal Public Defender (OFPD) formerly represented two individuals, identified as Witnesses 1 and 2, who may be called to testify regarding statements made by a material witness (MW) in this case at a jail where all three were being held. According to the government, if MW denies making relevant statements heard by the witnesses, testimony from Witness 1 or Witness 2 may be admissible as extrinsic evidence of MW's prior inconsistent statements under Federal Rule of Evidence 613(b). ECF 62 at 6. At the hearing, the government introduced an exhibit containing pertinent information regarding the government's investigation into this matter. *See* July 16, 2024 Order (ECF 71) (sealing government's exhibits 1-3).

The Court found that "no actual conflict exists at this time," but appointed Emily Munn, Esq., as co-counsel to Mr. Pahlawan in an effort to address any "potential conflict that arises in the future." July 15, 2024, Order (ECF 69) at 1.

In addition, the Court issued an Order directing the Office of the Federal Public Defender to submit a supplemental memorandum addressing the following issues:

1. The Court's authority to order that a member of the FPD be removed from a case.
2. Whether AFPD Koenig has any knowledge regarding Witness 1 and 2 as to matters outside of the discovery record.
3. The impact on the FPD's potential conflict should the Government file a Superseding Indictment, converting the material witness into a defendant in this case.
4. Practical measures the FPD could implement to protect attorney-client privilege should AFPD Koenig remain in the case.

This supplemental memorandum addresses these issues as follows: (A) Practical Measures the FPD could implement to protect attorney-client privileged information; (B) Whether AFPD Koenig has relevant knowledge outside the discovery record; (C) The impact of a superseding indictment naming MW as a defendant on the potential conflict of interest; and (D) the Court's authority to order the removal of an assigned AFPD.

## A. The Appointment of Ms. Munn as Co-Counsel and the Practical Measure of Precluding Her from Access to the OFPD's Former Client Files Addresses the Potential Conflict Presented by the Cross-Examination of Witnesses 1 and 2 by the OFPD.

The government's representation that it may seek to adduce testimony at trial from Witnesses 1 and 2, who were formerly represented by the OFPD, presents the possibility that the OFPD would face two conflicting ethical obligations: (1) the obligation to represent its current client, Mr. Pahlawan, diligently and competently,

2

*see* Va. Rules of Prof. Conduct. 1.1, 1.3, and (2) to maintain confidentiality and not use to the detriment of Witnesses 1 or 2 information obtained during the course of their representation, Va. Rule of Prof. Conduct 1.9(c).

The appointment of Ms. Munn as co-counsel resolves the potential conflict arising from cross-examination of Witnesses 1 and 2 at a trial, and MW at a deposition, insofar as Ms. Munn does not have access to, and will be kept separate from, all information that the OFPD may have obtained during the course of Witnesses 1 and 2's representation. As such, she will not have access to any information that was uniquely obtained pursuant to the representation of Witnesses 1 and 2 during the course of the OFPD's representation for use in representing Mr. Pahlawan. Indeed, undersigned counsel consulted with Virginia Bar Counsel as to whether the Court's appointment of outside co-counsel "remedied the potential conflict sufficiently to allow counsel to remain on the case throughout trial," and Virginia Bar Counsel responded unequivocally that it did.

**B. AFPD Koenig Has No Knowledge Regarding Witness 1 Relevant to this Case that is Outside of the Discovery Record, and the OFPD Has No Information Regarding Witness 2's Potential Relevance to this Case.**

During the representation of Witness 1, Witness 1 advised AFPD Koenig that he had communicated with a person involved in this case at Northern Neck Regional Jail. As soon as AFPD Koenig realized that Witness 1 may have information relevant to this case, she ended their conversation, asked no follow-up questions, and moved to withdraw from the representation of Witness 1.

Possession of confidential information from Witness 1 that is not otherwise

contained within the discovery record could pose competing obligations to share that information with Mr. Pahlawan on the one hand, while maintaining the confidentiality of attorney-client communications with now former-client Witness 1, on the other. (No OFPD attorney or staff communicated with Witness 2 regarding this case, as the motion to withdraw from his representation was filed based upon the notification from the U.S. Attorney's Office that he may have relevant information as to this case).

Now represented by substitute counsel, Witness 1 has provided a fulsome statement to the government that has been disclosed to the defense in discovery. That statement includes all of the information provided to AFPD Koenig in the short conversation she had with Witness 1 prior to her withdrawal from that representation, and more besides. In other words, AFPD Koenig has no information relevant to this case regarding Witness 1's communication with MW that is not contained within the discovery that has been disclosed. Accordingly, there is no competing obligation arising from the possession of information that was uniquely obtained in the course of representing Witness 1 that is pertinent to this case. Because the information Witness 1 shared with AFPD Koenig has now been disclosed in discovery, it can be used in the current representation without jeopardizing any continuing duty of confidentiality owed to a former client, Witness 1.

Importantly, both of the potential conflicts of interest arising from the government's potential use of testimony from Witnesses 1 and 2 involve ethical obligations that preclude the use of confidential information obtained during the

course of the representation of Witnesses 1 and 2, not potential conflicts that could interfere with ethical obligations owed to Mr. Pahlawan. In other words, neither involve potential conflicts that would adversely affect counsel's duty of competence, diligence, and confidentiality as to Mr. Pahlawan. To the extent that the Court's evaluation of these issues is measured solely by "the Sixth Amendment and federal decisional authority interpreting it," Gov't Reply Motion for Inquiry (ECF 68) at 2, as the government says, none of the potential conflicts implicate Mr. Pahlawan's right to conflict-free counsel as to him.

C. **The Impact of a Superseding Indictment Charging MW as a Defendant**

The government's Reply concedes that at present, it would only seek to adduce MW's prior inconsistent statements "to the extent MW lies" in his deposition. ECF 68 at 8. In other words, if the government believes that MW's deposition testimony is inconsistent with prior statements made to Witnesses 1 and/or 2, it may seek to introduce MW's "false" deposition testimony at a trial, and then seek to impeach such statements with testimony from Witnesses 1 and 2. At this point, however, speculation that MW's deposition testimony will be materially inconsistent with statements made to Witnesses 1 and 2 is entirely hypothetical.

Furthermore, introduction of MW's deposition testimony by the government simply to then impeach that testimony would be materially indistinguishable from the circumstances of *United States v. Morlang*, 531 F.3d 183, 189 (4th Cir. 1975). The government says *Morlang* is inapposite because it sought to detain MW in "February 2024—long before MW spoke" with Witnesses 1 and 2. ECF 68 at 7 (claiming that

5

*Morlang* is distinguishable because material witness warrant preceded knowledge of statements made to Witnesses 1 and 2). But the government's initial decision to seek the detention of MW pursuant to 18 U.S.C. § 3144 is irrelevant. What matters is whether the government seeks to introduce MW's deposition testimony at trial for the purpose of then introducing prior inconsistent statements.

As the Fourth Circuit explained in *Morlang*, "it has never been the rule that a party may call a witness where his testimony is known to be adverse for the purpose of impeaching him." *Morlang*, 531 F.2d at 189. "To so hold," the court reasoned, "would permit the government, in the name of impeachment, to present testimony to the jury by indirection which would not otherwise be admissible." *Id. Morlang* is thus about circumventing the rules of evidence *at a trial*, not the timing of the government's decision to seek a material witness warrant. In other words, what matters is whether, at the time that the government calls a witness at trial (or, as in this case, seeks to introduce deposition testimony), it is "fully aware that [the witness's] testimony" would be inconsistent with the testimony of Witnesses 1 and/or 2, such that the "real purpose for calling [the witness] [is] apparently to elicit from him a denial that he ever had any conversation with a fellow prisoner in which he implicated" the defendant. *Id.* at 188.

After MW's deposition, there will be no mystery about MW's testimony. Both the government and the defense will know long before the trial whether MW's testimony is consistent with the information the government obtains from Witnesses 1 and 2, or is materially inconsistent with their testimony. Because it will be "in no

way surprised," *id.* at 188 n.11, at the time of trial by MW's deposition testimony taken months before trial, *Morlang* establishes that the government cannot introduce ostensibly inconsistent deposition testimony for the purpose of seeking to admit testimony from Witnesses 1 and 2 to impeach the deposition statements it introduced. *See id.* at 189.

Of course, we agree with the government that if the *defense* decides to introduce MW's deposition testimony at trial, the government would potentially be permitted to introduce prior inconsistent statements through Witnesses 1 and/or 2. But the remedy for that potential conflict has already been taken by the Court: the appointment of outside counsel who is shielded from confidential information obtained in the course of the representation of Witnesses 1 and 2, and who would be responsible for their cross-examination. Again, the possibility that the defense would find it necessary to introduce MW's deposition testimony that is inconsistent with previous statements made by MW to Witnesses 1 and 2 — in addition to or instead of testimony from *nine* other material witnesses scheduled for deposition — is entirely speculative.

It is also clear that if a superseding indictment charges MW as an additional co-defendant, testimony from Witnesses 1 and 2 about MW's statements may be admissible as the statement of a party opponent. *See* Fed. R. Evid. 801(d)(2). But if MW's out of court statements implicate Mr. Pahlawan (or any other co-defendant), and MW declines to testify, admission of MW's prior statements at a joint trial would likely implicate *Bruton v. United States*, 391 U.S. 123 (1968).

To the extent the Court were to admit such testimony at a joint trial, as confirmed by Virginia Bar counsel, the addition of Ms. Munn to Mr. Pahlawan's defense team to handle the cross-examination of Witnesses 1 and 2 would address any potential conflict of interest arising from the OFPD's previous representation of Witnesses 1 and 2.

### D. Given the Absence of a Serious Potential Conflict of Interest, OFPD Staffing on this Case Is Reserved to the FPD.

The Court undoubtedly has "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession," as well as protecting Mr. Pahlawan's Sixth Amendment right to conflict-free counsel. *See Wheat v. United States*, 486 U.S. 153, 160 (1988). That said, disqualification of counsel is ordinarily warranted only in the event of an actual conflict of interest or "by a showing of a serious potential for conflict." *Id.* at 164. In other words, the "drastic step of disqualification" requires that the "asserted conflict must be a real one," not merely "hypothetical" or "based on imagined scenarios of conflict." *See United States v. Perry*, 30 F. Supp. 3d 514, 533-34 (E.D. Va. 2014) (Davis, J.) (citations omitted).

At this point, it is far too premature to determine that AFPD Koenig should be disqualified from representing Mr. Pahlawan. The possibility that testimony from Witnesses 1 and 2 would be admitted at trial is based upon hypothetical speculation that MW's deposition testimony will be materially inconsistent with testimony from Witnesses 1 and 2. Prior to the deposition of MW, it is impossible to know whether MW's testimony will be inconsistent with that of Witnesses 1 and 2. If it's consistent, there would be no basis for the government to introduce testimony from Witnesses 1

and 2, and no conflict of interest arising from the OFPD's prior representation of Witnesses 1 and 2. Even if MW's deposition testimony is inconsistent, the Fourth Circuit's decision in *Morlang* bars the government from admitting MW's deposition testimony simply to then introduce prior inconsistent statements through the testimony of Witnesses 1 and 2. Again, under such circumstances, there would be no conflict.

Finally, as discussed above and as confirmed by Virginia State Bar counsel, the appointment of Ms. Munn as co-counsel for Mr. Pahlawan establishes that a "serious potential for conflict" does not exist because she would be responsible for conducting the deposition of MW and the cross examination of Witnesses 1 and 2 in the unlikely circumstance that their testimony was admitted at a trial.

In sum, "the likelihood of [the] actual occurrence [of a conflict] is much too speculative on the present record to warrant disqualification." *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992). Consequently, Judicial Conference Policy, the EDVa CJA Plan, and relevant caselaw establish that the assignment of attorneys from the OFPD to work on this matter must be reserved to the Federal Public Defender. Specifically, Section VII(F) of the EDVA CJA Plan provides:

> The Federal Public Defender will be responsible for the supervision and management of the Federal Public Defender Organization. Therefore, the Federal Public Defender will be appointed in all cases assigned to that organization for subsequent assignment to staff attorneys at the discretion of the Federal Public Defender.

EDVA CJA Plan § VII(F) (2023). Likewise, as Chief Judge Davis observed, the Guide to Judiciary Policy provides that:

9

> When cases are assigned to a federal public or community defender
> organization, the appointment should be made in the name of the
> organization (i.e., the federal public defender or community defender),
> rather than in the name of an individual staff attorney within the
> organization." Guide to Judiciary Policy, *supra*, § 220.35 (emphasis
> added). Thereafter, "[t]o ensure the effective supervision and
> management of the organization, federal public defenders and
> community defenders should be responsible for the assignment of cases
> within their own offices." *Id.* § 440.

*Lawlor v. Zook*, 2015 WL 4590827, at *2 (E.D. Va. July 28, 2015) (Davis, J.).

The minutes from the Rule 5 hearing indicate that the Court appointed the OFPD as counsel in this matter rather than individual attorneys. Feb. 22, 2024, Minutes, ECF 9 (noting "FPD Appointed – Amy Austin & Paul Gill"). Although AFPD Paul Gill was present at the Rule 5 hearing, his involvement in other significant matters required the assignment of another AFPD, Laura Koenig, to work on this case. Given Ms. Koenig's significant involvement from the beginning of this case, her removal from the defense team at this point would significantly disrupt Mr. Pahlawan's defense and the defense's relationship with Mr. Pahlawan.

In conclusion, while the Court undoubtedly has authority to discharge an attorney from a case based upon a "serious potential conflict of interest," in the absence of such a showing, the Court must "respect the professional independence of the public defenders whom it engages," *Polk Cnty. v. Dodson*, 454 U.S. 312, 321–22 (1981), and adhere to the CJA plan's requirement that the appointed organization must determine how best to appropriately staff this case. Accordingly, Mr. Pahlawan respectfully requests that this Court not relieve Ms. Koenig or the OFPD from his case.

Respectfully submitted,

MUHAMMAD PAHLAWAN

By: _____/s/_____
    Amy L. Austin
    Va. Bar No. 46579
    Assistant Federal Public Defender
    Office of the Federal Public Defender
    701 E. Broad St., Ste. 3600
    Richmond, VA 23219
    (804) 565-0880
    amy_austin@fd.org

    Laura Koenig
    Va. Bar No. 86840
    Counsel for Defendant
    Office of the Federal Public Defender
    701 E Broad Street, Suite 3600
    Richmond, VA 23219-1884
    Ph. (804) 565-0881
    Fax (804) 648-5033
    laura_koenig@fd.org

    Geremy C. Kamens
    Va. Bar No. 41596
    Federal Public Defender
    Office of the Federal Public Defender
    1650 King Street, Suite 500
    Alexandria, VA 22314
    (703) 600-0800
    (703) 600-0880 (fax)
    Geremy_Kamens@fd.org